UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

NANCY GARDNER,

    Plaintiffs,

v.                                                      Case No. 13-12720

HON. AVERN COHN

QUICKEN LOANS, INC.,FLAGSTAR BANK, FSB,
POTESTIVO & ASSOCIATES, P.C.,

    Defendants.

_____/

## MEMORANDUM AND ORDER GRANTING DEFENDANTS' MOTION TO DISMISS (Docs. 7, 21)[1]

### I. Introduction

This is another of one of many cases pending in this district involving a default on a mortgage and the subsequent foreclosure. The property subject to the mortgage has been sold at a foreclosure sale. The redemption period has not yet expired. Plaintiff Nancy Gardner is suing Quicken Loans, Inc. (Quicken), Flagstar bank, FSB (Flagstar), and Potestivo & Associates, P.C. (Potestivo). The complaint makes the following claims, phrased by plaintiff as follows:

| | |
|---|---|
| Count I | Declaratory Judgment based upon Defendants' Admission of No Right to Enforce the Gardner Note for Payment nor Execute a Non-Judicial Foreclosure Under and Test within the Michigan UCC |
| Count II | Contract by Adhesion |

---

[1] Although originally schedule for hearing, upon review of the parties' papers, the Court deems this matter appropriate for decision without oral argument. See Fed. R. Civ. P. 78(b); E.D. Mich. LR 7.1(f)(2).

Count III    Injunctive Relief

Before the Court is Quicken and Potestivo's motion to dismiss under Fed. R. Civ. P. 12(b)(6). Flagstar concurs in the motion. For the reasons that follow, the motion will be granted and the case will be dismissed.

## II.  Background

### A.  The Note and Mortgage

On May 18, 2007, plaintiff executed a note in the amount of $215,250.00 to obtain a loan from Flagstar to purchase real property commonly known as 7221 State Road, Burtchville, Michigan 48059. As security for the loan, plaintiff executed a mortgage on the property. The mortgage was recorded with the St. Clair County Register of Deeds on May 22, 2007, in Liber 3723, Page 10. Both the note and the mortgage were in favor of Flagstar, as the lender, with Mortgage Electronic Registration Systems, Inc. (MERS) acting solely as nominee for Flagstar and its successors and assigns. The mortgage also provides that MERS is the mortgagee under the mortgage.

On March 4, 2013, the mortgage was assigned from MERS as nominee for Flagstar, its successors and assigns, to Quicken. The assignment was recorded with the St. Clair County Register of Deeds on March 8, 2013, in Liber 4367, Page 526.

### B.  Default and Foreclosure

Plaintiff defaulted on the terms of the note by failing to make her required payments. Potestivo, a law firm acting on behalf of Quicken, began the foreclosure by advertisement process, as explained below.

On February 11, 2013, Potestivo served a pre-foreclosure notice on plaintiff,

along with a list of approved housing counselors pursuant to M.C.L. § 600.3205a(1) and(2). The notice instructed plaintiff as follows:

> Within 30 days after this notice is sent, you may, either by contacting [Potestivo's] Home Retention Department or by contacting a housing counselor from the list enclosed, request a meeting with [Potestivo] to attempt to work out a modification of the mortgage loan to avoid foreclosure. If you request a meeting with the Designated agent, then within 10 days of the request, we will send you a list of documents which will need to be returned so that the meeting can be conducted. If all documents requested are executed, completed, and returned to the Designated Agent with[sic] 60 days of this notice, then foreclosure proceedings will not be commenced until at least 90 days from the date of the is notice. If requested documents are not returned within 60 days from the date of this notice, then foreclosure may proceed. If an agreement to modify the mortgage loan is reached and you abide by the terms of the agreement, the mortgage will not be foreclosed. If an agreement to modify the mortgage loan is not reached and it is determined that you meet what criteria for a modification under MCL 600.3205c(1) and foreclosure under this chapter is not allowed under MCL 600.3205c(7), the foreclosure of the mortgage will proceed before a judge instead of by advertisement

On March 6, 2013, plaintiff responded to the notice, stating she requested a meeting to discuss a loan modification.

On March 12, 2013, Potestivo sent plaintiff a letter stating that it was the designee for Quicken with regard to the mortgage loan and enclosed paperwork and list of documents referenced in the February 11, 2013 letter. The letter stated that plaintiff needed to fill out the paperwork and send in the documents within 7 days so she could be evaluated for a possible loan modification. The letter also stated that the 90 day hold would expire on May 13, 2013.

On March 16, 2013, plaintiff wrote to Potestivo, asking for information regarding her loan and whether Potestivo had the legal right to negotiate with her. Plaintiff did not return the paperwork or documents Potestivo requested.

On March 25, 2013, Potestivo wrote to plaintiff, again asking for plaintiff to fill out

the paperwork and supply the supporting documentation within 7 days in order to determine whether she was eligible for a loan modification. The letter again advised plaintiff that the 90 day hold would expire on May 13, 2013.

On April 8, 2013, Potestivo again wrote to plaintiff asking for the documentation, stating it must receive the documents by April 12, 2013.

On May 23, 2013, Potestivo wrote to plaintiff. The letter responded to plaintiff's request for information regarding her mortgage loan. Potestivo also attached copies of the note, mortgage, and assignment. The letter also informed plaintiff of the balance due on the loan and total pay off amount ($210,270.10). The letter also reminded plaintiff that a foreclosure sale was scheduled for May 30, 2013.

During this time because plaintiff did not provide the documents necessary to determine whether she was eligible for a modification, the foreclosure proceedings continued. The foreclosure notice was published for four consecutive weeks in the Port Huron Times Herald, with the first publication taking place on April 19, 2013, and the fourth and final publication taking place on May 10, 2013. The foreclosure notice was also posted in a conspicuous place on the Property on April 26, 2013. Ultimately, a Sheriffs Sale was held on May 30, 2013, at which Quicken was the highest bidder and received a Sheriffs deed to the property. The redemption period has not yet expired.

### C. Court Proceedings

On June 19, 2013, plaintiff filed the instant action in St. Clair County Circuit Court. Defendants timely removed on the grounds that the complaint asserted a federal claim under the Real Estate Settlement Procedures Act.

### III. Legal Standard

**A.**

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) tests the sufficiency of a complaint.  To survive a Rule 12(b)(6) motion to dismiss, the complaint's "factual allegations must be enough to raise a right to relief above the speculative level on the assumption that all of the allegations in the complaint are true." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 545 (2007).  See also Ass'n of Cleveland Fire Fighters v. City of Cleveland, Ohio, 502 F.3d 545, 548 (6th Cir.2007). The court is "not bound to accept as true a legal conclusion couched as a factual allegation." Aschcroft v. Iqbal, ___ U.S. ___, 129 S.Ct. 1937, 1950 (internal quotation marks and citation omitted). Moreover, "[o]nly a complaint that states a plausible claim for relief survives a motion to dismiss." Id.  Thus, "a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth.  While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." Id.  In sum, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim for relief that is plausible on its face." Id. at 1949 (internal quotation marks and citation omitted).

**B.**

In ruling on a motion to dismiss, the Court may consider the complaint as well as (1) documents referenced in the pleadings and central to plaintiff's claims, (2) matters of which a court may properly take notice, (3) public documents, and (4) letter decisions of

government agencies may be appended to a motion to dismiss. Tellabs, Inc. v. Makor Issues & Rights, Ltd., 551 U.S. 308, 127 S.Ct. 2499, 2509 (2007). See also Greenberg v. Life Ins. Co. of Va., 177 F.3d 507, 514 (6th Cir. 1999)

Specifically in contract cases such as this, "if the plaintiff fails to attach the written instrument upon which he relies, the defendant may introduce the pertinent exhibit," which is then considered part of the pleadings. QQC, Inc. v. Hewlett-Packard Co., 258 F. Supp. 2d 718, 721 (E.D. Mich. 2003) (citing Weiner v. Klais & Co., Inc., 108 F.3d 86, 89 (6th Cir. 1997)). A court is also entitled to consider matters of public record without converting the motion to one for summary judgment. Commercial Money Ctr., Inc. v. Illinois Union Ins. Co., 508 F.3d 327, 336 (6th Cir. 2007).

Here, the Court has considered documents relating to the mortgage, loan modification process, and the foreclosure which are referenced in the complaint and central to plaintiff's claims.

### IV. Analysis

Defendants say that none of the counts of the complaint state a plausible claim for relief. Each count is addressed in turn below.

### A. Count I

Count I of the complaint appears to assert multiple claims. None of the claims are viable. First, plaintiff's main challenge to the foreclosure sale appears to be based on defendants' alleged failure to comply with the Article 3 and Article 9 of the Michigan Uniform Commercial Code (UCC). This argument does not carry the day. Multiple courts in this district have held that the UCC does not apply to mortgage foreclosures. See e.g. Schare v Mortgage Electronic Registration Systems, Inc, No. 11-11889, 2012

US Dist LEXIS 78580, at *3-6 (E.D. Mich. 2012) (holding that "Article 3 of the UCC does not apply to mortgages because Article 3 applies only to negotiable instruments and a mortgage instrument is not a negotiable instrument since it does not contain an unconditional promise to pay a sum certain [but] merely secures payment of the negotiable instrument") (citing Jaboro v. Wells Fargo Bank, NA., No. 10-11686, 2010 U.S. Dist. LEXIS 134672, at *16 (E.D. Mich. Dec.20, 2010); Howze v New Century Mortgage Corp., No. 08-13458, 2008 US Dist LEXIS 107517, at *2 n. 1 (E.D. Mich. Dec. 2, 2008) (holding that "[t]he cited sections of the UCC are also inapplicable because this case involves a mortgage on real property rather than negotiable instruments or investment securities) (citing UCC §§ 3-102, 3-104, 8-102); and Hilman v Mortgage Electronic Registration Systems, Inc., No. 06-13055, 2007 US Dist LEXIS 29578, at *8 (E.D. Mich. Apr. 23, 2007) ("Contrary to Plaintiffs assertion, nothing in section 600.3204 requires a named mortgagee to be a holder in due course of the note). See also Pace v. Bank of America, N.A., No. 12–12014, 2012 WL 5929931, at *2 (E.D. Mich. Nov.27, 2012) ("Article 9 of the UCC applies to personal property, not real property."). As such, plaintiff's claim based on a violation of the UCC fails to state a plausible claim for relief and must therefore be dismissed.

Moreover, plaintiff also appears to contend that defendants, particularly Quicken and Potestivo, lack "standing" to foreclosure on her mortgage because of a failure to "endorse" the note or be a holder in due course of the note. Plaintiff is mistaken in her assertion. There is no Michigan statutory requirement to foreclose by advertisement that the underlying note evidencing the indebtedness has to be endorsed to the foreclosing party (Quicken) or that the foreclosing party (Quicken) be a holder or

holder-in-due-course of the note. See Crews v. Fannie Mae, No. 11-11656, 2012 U.S. Dist. LEXIS 25237, at *16 (E.D. Mich. Feb. 8, 2012), report and recommendation adopted, 2012 U.S. Dist. LEXIS 25227 (E.D. Mich., Feb. 28, 2012). Rather, Michigan's foreclosure by advertisement statute simply requires that the party instituting the foreclosure have an interest in the indebtedness. See M.C.L § 600.3204(1)(d). Here, the party instituting the foreclosure (Quicken) did, and still has, an interest in the indebtedness by virtue of the assignment. The Michigan Supreme Court has held that the mortgagee is "the owner ... of an interest in the indebtedness secured by the mortgage" capable of seeking foreclosure by advertisement. Residential Funding Co. v. Saurman, 490 Mich. 909 (2011) (citations omitted). As the Michigan Supreme Court re-stated in Saurman, "[i]t has never been necessary that the mortgage should be given directly to the beneficiaries. The security is always made in trust to secure obligations, and the trust and the beneficial interest need not be in the same hands." Id. at 910. In other words, the note and mortgage may be split and held by different entities.

In Count I, plaintiff also appears to challenge the foreclosure based on the assertion that she was entitled to a copy of the original note before Quicken could foreclose. Plaintiff, however, has not provided any authority to support her assertion that she is entitled to receive or inspect the note, or that the note itself is required in order to foreclose on the mortgage. Indeed, courts have held to the contrary. See Aliahmad v. US Bank Nat. Ass 'n, No. 12-11844, 2012 U.S. Dist. LEXIS 120627, at *13-14 (E.D. Mich. Aug. 24, 2012) (holding that "there is no statutory requirement that the original note or the so-called "wet-ink" mortgage be presented"); Jozlin v. US. Bank Nat. Ass 'n, No. 11-12749, 2012 U.S. Dist. LEXIS 511, at *7-8 (E.D. Mich. Jan.4,

2012) ("Inasmuch as [Michigan's foreclosure by advertisement] statute does not require presentation of the original note or a "wet ink" mortgage, this allegation by the Jozlins fails to state a claim upon which relief can be granted."). As such, plaintiff's allegations relating to the UCC and presentment of the note fails to state a claim upon which relief can be granted.[2]

Plaintiff also includes a reference to the Real Estate Settlement Procedures Act (RESPA) under Count I. Paragraph 12 states: "[Flagstar] sold [the note] shortly after it was originated, (without notifying Plaintiff of it ownership, in violation of RESPA Section 6 (12 USC 2605)) and thereby disclaimed any rights in the Mortgage Note." Plaintiff's RESPA claim fails. First, RESPA does not require notification to the borrower that the note may be transferred or that the note has been transferred. Rather, RESPA requires that, at the time of application for the loan, the original lender provide the notice that the "servicing of the loan" may be transferred. 12 U.S.C. § 2605(a). It also requires that when the servicing rights are transferred, each servicer shall notify the borrower of the transfer. 12 U.S.C. § 2605(b),(c). Therefore, Plaintiffs reliance on section 2605 to argue that Flagstar was required to provide her with notice of the sale of the note is misplaced.

Second, the mortgage clearly provides that the note can be sold without notice to the borrower. Paragraph 20 of the mortgage provides:

---

[2]In the first paragraph under Count II, plaintiff says that mortgage included a waiver of the "... UCC and Notice of Presentment. .. " Plaintiff is mistaken. The mortgage contains no such waivers. To the extent that plaintiff meant the waiver of the rights to Presentment and Notice of Dishonor, found in paragraph 9 of the note, the Michigan Supreme Court has held that waiver of such requirements is permissible. See Genesee County Sav. Bank v. Rosenthal, 265 Mich. 291,(1933); Kramer v. Stryker, 274 Mich. 179, 181-182 (1936).

> Sale of Note; Change of Loan Servicer; Notice of Grievance. The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successive Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Thus, plaintiff was advised of the possibility of transfers of the note and changes of the loan servicer and describes the notice a borrower may receive related to such changes of the loan servicer. Thus, there was no requirement that plaintiff be notified of the sale or transfer of the note.

Third, courts in this district have held that in order to maintain a RESPA claim, a plaintiff must allege that the violation resulted in actual pecuniary damages. See Zemer v. Am. Home Mortg. Servicing, Inc., No. 11-15364, 2013 U.S. Dist. LEXIS 27488, at *5-6 (E.D. Mich. Feb. 28, 2013) (citing Pliam v. Cendant Mortg. Corp., No. 11-3720, 2012 U.S. Dist. LEXIS 58222, at *3 (D. Minn. Apr. 26, 2012) ("While RESPA itself does not set a pleading standard, courts have interpreted the statute to require a showing of pecuniary damages in order to state a claim.")). Plaintiff has not done so.

### B. Count II

In Count II, plaintiff alleges that the mortgage is a contract of adhesion, and should thus be held unenforceable. This claim fails to state a plausible claim for relief.

Under Michigan law, even a contract of adhesion "is simply that: a contract. It must be enforced according to its plain terms unless one of the traditional contract defenses applies." Rory v. Cont'l Ins. Co., 473 Mich. 457, 477 (2005) (internal footnote omitted). Typical characteristics of an "adhesion contract" include unequal bargaining power, standardized language prepared by the stronger party, and a "take it or leave it" offering. Id. at 484–85; see also Margaret M. Smith, Note, Adhesion Contracts Don't Stick in Michigan: Why Rory Got It Right, 5 Ave Maria L. Rev. 237, 238 (2007) (elaborating on the characteristics). A contract or contract provision is not invariably substantively unreasonable simply because it is foolish for one party and very advantageous to the other. Gillam v. Michigan Mortgage-Investment Corp., 224 Mich. 405, 409 (1923). Rather, the challenged provision must be substantively unreasonable. See Rehmann, Robson & Co v. McMahan, 187 Mich. App 36, 43-44 (1991). A term is substantively unreasonable where the inequity of the term is so extreme as to shock the conscience. Id.

Here, plaintiff does not say that she had no choice but to obtain the mortgage from Flagstar. To the contrary, as pointed out in defendants' papers, there are well over 500 mortgage brokers in the state of Michigan. Plaintiff simply could have gone elsewhere. Moreover, plaintiff does not say which particular provisions of the note and/or mortgage are substantially unreasonable. Thus, plaintiff has not alleged a plausible claim for a contract of adhesion.

### C.  Count III

In Count III, plaintiff asserts a claim of quiet title. This assertion fails to state a

claim upon which relief may be granted. In order to properly make a quiet title claim, plaintiff must meet the requirements set forth in M.C.R. § 3.411, or, for a federal cause of action, 28 U.S.C. § 2409a(d). These provisions require that plaintiff properly allege her ownership interest in the property. M.C.R. § 3.411(B) states, "(2) The complaint must allege, (a) the interest the plaintiff claims in the premises; (b) the interest the defendant claims in the premises; and (c) the facts establishing the superiority of the plaintiff's claim." 28 U.S.C. § 2409a(d) states,"[t]he complaint shall set forth with particularity the nature of the right, title, or interest which the plaintiff claims in the real property, the circumstances under which it was acquired, and the right, title, or interest claimed by the United States." Moreover, plaintiff must show that he has title to the property superior to claims by others with an interest in the property. Beaulah Hoagland Appelton Qualified Pers. Residence Trust v. Emmet County Road Comm'n, 236 Mich. App. 546, 550 (1999) ("In an action to quiet title, the plaintiff have the burden of proof and must make out a prima facie case of title")

    Here, plaintiff has not said how she has a greater interest in the property than any of the defendants. Moreover, plaintiff has not denied that she failed to make timely payments under the note and mortgage. Although she disputes that she is in "default," the fact that she failed to make payments militates against quieting title to her. See Yuille v. American Home Mortgage Serv's. Inc., 483 Fed. Appx. 132, at *2 (6th Cir. May 29, 2012) (finding that a borrowers failure to make timely payments precluded a quiet title claim).

    Plaintiff's quiet title also fails because the Sixth Circuit has recently held that a quiet title claim is a remedy, and not a separate cause of action. Goryoka v. Quicken

Loan, Inc., 2013 WL 1104991, at *3 (6th Cir. March 18, 2013).

Overall, plaintiff is not entitled to any relief under Count III.

### V.  Conclusion

For the reasons stated above, plaintiff has not established that the foreclosure should be set aside.  The record shows that plaintiff knew she was in default on the mortgage and was aware of the foreclosure and sale.  Plaintiff's challenges to the process are not sustainable.

Accordingly, defendants' motion to dismiss is GRANTED.  This case is DISMISSED.

SO ORDERED.

                                          s/Avern Cohn  
                                          AVERN COHN  
                                          UNITED STATES DISTRICT JUDGE

Dated:  August 27, 2013


I hereby certify that a copy of the foregoing document was mailed to the attorneys of record on this date, August 27, 2013, by electronic and/or ordinary mail.

                                          s/Sakne Chami  
                                          Case Manager, (313) 234-5160